UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTEBAN QUIROGA-CHAPARRO,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al.,<br><br>Respondents. | No. 1:25-cv-1731 AC<br><br><br><br>ORDER |

Petitioner, an immigration detainee proceeding through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Currently before the court is petitioner's motion for a temporary restraining order (ECF No. 9), which respondent opposes (ECF No. 12).[1]

I. Factual and Procedural Background

Petitioner, a native and citizen of Colombia, entered the United States without inspection on April 14, 2023, seeking asylum. ECF No. at 1 at 2. At that time, he was detained and issued a Notice and Order of Expedited Removal under 8 U.S.C. § 1225(b)(1) on the grounds of

////

---

[1] Although the petition itself is now fully briefed, because petitioner need only establish a *likelihood* of success on the merits in order to warrant relief in the form of a temporary restraining order, the court will defer full consideration of the merits of the petition so as to not delay the granting of preliminary relief, which would subject petitioner to irreparable harm, as set forth further in this order.

1

inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i)(I).[2]  ECF No. 9-1 at 10.  Petitioner expressed a fear of physical harm and death if he was returned to Columbia, and on April 20, 2023, an asylum officer made a positive credible fear determination.  ECF No. 1 at 2; ECF No. 9-1 at 8, 10.  On May 1, 2023, after it was determined that petitioner was not a flight risk or a danger to the community, he was released on parole with reporting requirements under the Alternatives to Detention program.  ECF No. 9-1 at 8, 10.  Since then, petitioner has not missed any of his in-person check-ins, has responded to all requests for his location through SMARTLink, and has been in compliance with the conditions of his parole.  Id. at 10-11; ECF No. 1 at 12.  Petitioner has resided in the United States for over two-and-a-half years and during that time he met and began dating his now husband, who is a United States citizen, and enrolled in English classes.  ECF No. 1 at 3; ECF No. 9-1 at 10.  He has no criminal history.  ECF No. 9-1 at 14.

On April 9, 2024, petitioner filed an asylum application and removal proceedings were commenced under 8 U.S.C. § 1229a.  Id. at 10; ECF No. 1 at 3.  On April 29, 2025, petitioner's husband submitted a "Petition for Alien Relative."  Id.  In July 2025, an immigration judge noticed a Master Hearing in petitioner's case for July 17, 2026.  Id.

On October 22, 2025, petitioner arrived at the ICE facility in San Francisco for what he thought was a routine check-in.  ECF No. 9-1 at 8, 11.  Instead, without notice, cause, or explanation, he was arrested and detained.  Id. at 8, 11.

On December 4, 2025, petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging his detention.  ECF No. 1.  The petition asserts three claims for relief.  First, petitioner asserts that his detention is an abuse of discretion and violates the Administrative Procedures Act (APA), 8 U.S.C. § 1226(b), and 8 C.F.R. § 1236.1(c)(9).  Id. at 10-11.  Next, petitioner alleges that his detention is not in accordance with law and is in excess of statutory authority, which violates the APA, 8 U.S.C. § 1226(b), and 8 C.F.R. § 1236.1(c)(9).  Id. at 11.  Finally, petitioner argues that his re-detention without a pre-deprivation hearing violates

---

[2] For consistency, the undersigned will cite to the applicable United States Code sections throughout without reference to the corresponding section of the Immigration and Nationality Act.

procedural due process. Id. at 12.  On December 24, 2025, petitioner filed a motion seeking a temporary restraining order in which he requested that respondents be required to immediately release him from custody.[3]  Id. at 15.  Respondents have opposed the motion for a temporary restraining order.  ECF No. 12.

## II.  Motion for a Temporary Restraining Order

### A.  Legal Standard for a Temporary Restraining Order

The standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction.  Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating that the analysis for temporary restraining orders and preliminary injunctions is "substantially identical").  To obtain either form of injunctive relief, the moving party must show: "[(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (citations omitted).  "Likelihood of success on the merits 'is the most important' Winter factor."  Disney Enters., Inc. v. VidAngel, Inc., 869 F.3d 848, 856 (9th Cir. 2017) (quoting Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015)).  However, a party seeking injunctive relief must make a showing on all four prongs of the Winter factors to obtain injunctive relief.  All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

### B.  Discussion

#### i.  Likelihood of Success on the Merits

Petitioner argues that his detention violates procedural due process[4] because he has a protected liberty interest in his continued release.  ECF No. 9-1 at 15-19.  In opposition,

---

[3] Although petitioner did not expressly request immediate release in the petition, in light of the petition's request for "any further relief this Court deems just and proper" (ECF No. 1 at 13), the undersigned will deem the request for immediate release in the motion for temporary restraining order (ECF No. 9-1 at 21) and in the reply in support of the petition (ECF No. 10 at 5) as a constructive amendment of the petition.

[4] Petitioner also argues that he is likely to succeed on a substantive due process claim.  ECF No. 9-1 at 11-15.  However, the petition asserts only a violation of his right to procedural due process.  ECF No. 1.  If petitioner seeks to raise a substantive due process claim, he will need to file an amended petition.

1  respondents argue that petitioner is detained pursuant to § 1225(b)(1), and as a person subject to
2  expedited removal he has no liberty interest in procedures not provided by the statute. ECF No.
3  12. In so arguing, respondents acknowledge that this court has found a liberty interest to exist in
4  similar circumstances.[5] Id. at 10.

5       The petition alleges that petitioner's detention violates the Immigration and Nationality
6  Act (INA) because he is in § 1229a removal proceedings and therefore subject to § 1226 and
7  entitled to the procedural protections required by that statute and its implementing regulations.
8  See ECF No. 1 at 6-7. Respondent contends that petitioner is detained pursuant to § 1225(b)(1)
9  and therefore is not entitled to any procedural protections. For the reasons set forth below, the
10 undersigned finds that even assuming for purposes of this analysis that petitioner is subject to §
11 1225(b)(1),[6] his release on parole created a liberty interest in his continued release, and the failure
12 to provide him with a pre-deprivation hearing likely violated his right to procedural due process.

13      Title 8 U.S.C. § 1225 governs the procedures by which the government may mandatorily
14 detain "an applicant for admission." Section 1225(a)(1) defines "an applicant for admission" as a

---

[5] In ordering a response to the motion for temporary restraining order, respondents were directed to "substantively address whether any provision of law or fact in this case would distinguish it from this court's decisions in Amaya-Quinteros v. CoreCivic, 1:25-cv-1672 AC, 2025 WL 3687642 (E.D. Cal. Dec. 19, 2025); Tenorio Rugama v. Chestnut, 1:25-cv-1918 AC, 2025 WL 3707234 (E.D. Cal. Dec. 22, 2025), and other similar cases previously decided by this court, or indicate that the matter is not substantively distinguishable" ECF No. 11. The opposition does not identify any provision of law or fact in this case that would substantively distinguish it from these cases. ECF No. 12. Instead, respondent states that "Petitioner's claims largely align with those of earlier cases" and "acknowledges that, while [t]here are some factual distinctions between the cases, the legal arguments advanced in this briefing are substantially the same as those advanced in previous cases before this Court." Id. at 1-2. Respondents' does not identify any "factual distinctions" that would substantively distinguish this case and their admissions alone are sufficient to grant relief on the same grounds and based on the same reasoning as articulated in those cases.

[6] For the reasons this court explained in Amaya-Quinteros, the undersigned finds it unlikely that at the time of his re-detention petitioner constituted "an applicant for admission" under § 1225(a)(1) such that he is subject to mandatory detention under § 1225(b)(1). 1:25-cv-1672 AC, 2025 WL 3687642, at *7-8 (examining the language of § 1225 and finding that § 1225(b) applies to noncitizens seeking to come *into* the United States while § 1226 applies to noncitizens *already present* in the country). Moreover, respondents acknowledge that "[u]ntil recently, the government interpreted Section 1226(a) to be an available detention authority for noncitizens [present without being admitted or paroled] placed directly in full removal proceedings under Section 1229a." ECF No. 12 at 7.

noncitizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including [a noncitizen] who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1).

"[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." Jennings v. Rodriguez, 583 U.S. 281, 287 (2018). Both categories are subject to mandatory detention until a certain point or until certain proceedings have concluded. Id. Despite mandatory detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." Id. at 288 (citing 8 U.S.C. § 1182(d)(5), 8 C.F.R. §§ 212.5(b), 235.3 (2017)). The "express exception to detention" under 8 U.S.C. § 1182(d)(5) "implies that there are no *other* circumstances under which [noncitizens] detained under § 1225(b) may be released." Id. at 300. Accordingly, there is no statutory right to a bond hearing for noncitizens detained under § 1225(b). Id. at 296-97. By regulation, release is available only where "the aliens present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b).

Section 1225(b)(1) applies to applicants for admission who are (1) "arriving in the United States" and are inadmissible under 8 U.S.C. § 1182(a)(6)(C) (for fraud or misrepresentation) or § 1182(a)(7) (for lack of valid documents); or (2) not natives or citizens of certain countries in the Western Hemisphere, inadmissible under 8 U.S.C. § 1182(6)(A) (for entry without admission or parole), inadmissible under 8 U.S.C. § 1182(a)(6)(C) or § 1182(a)(7), and have not affirmatively shown they have physically resided in the United States for a continuous period of two years prior to this determination. 8 U.S.C. § 1225(b)(1)(A)(i), (iii). If a noncitizen subject to § 1225(b)(1) "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the [noncitizen] for an interview by an asylum officer." 8 U.S.C. § 1225(b)(1)(A)(i)-(ii). If after conducting a credible fear interview the asylum officer determines that the noncitizen has a credible fear of persecution, the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(i)-(ii). Where there is a positive credible fear determination, the United States Citizenship and Immigration

1    Services (USCIS) has discretion to "issue a Form I-862, Notice to Appear, for full consideration
2    of the asylum and withholding of removal claim in proceedings under [8 U.S.C. § 1229a]." 8
3    C.F.R. § 208.30(f).

4    The Due Process Clause protects persons in the United States from being "deprived of
5    life, liberty, or property, without due process of law." U.S. Const. amend. V.  "[T]he Due Process
6    Clause applies to all 'persons' within the United States, including aliens, whether their presence
7    here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001)
8    (citations omitted).  "Freedom from imprisonment—from government custody, detention, or other
9    forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."
10   Zadvydas, 533 U.S. at 690.

11   "Even when a statute allows the government to arrest and detain an individual, a protected
12   liberty interest under the Due Process Clause may entitle the individual to procedural protections
13   not found in the statute." Omer G.G. v. Kaiser, No. 1:25-cv-1471 KES SAB, 2025 WL 3254999,
14   at *5 (E.D. Cal. Nov. 22, 2025) (citing Young v. Harper, 520 U.S. 143, 147-49 (1997); Gagnon v.
15   Scarpelli, 411 U.S. 778, 782 (1973); Morrissey v. Brewer, 408 U.S. 471, 482 (1972)).
16   Additionally, "even when an initial decision to detain or release an individual is discretionary, the
17   government's subsequent release of the individual from custody creates 'an implicit promise' that
18   the individual's liberty will be revoked only if they fail to abide by the conditions of their
19   release." Calderon v. Kaiser, No. 25-cv-6695 AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug.
20   22, 2025) (citing Morrissey v. Brewer, 408 U.S. 471, 482 (1972)).  "[T]he fact that a decision-
21   making process involves discretion does not prevent an individual from having a protectable
22   liberty interest." Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019).

23   Here, petitioner asserts that he was paroled into the United States after it was determined
24   that he was neither a danger to the community nor a flight risk and has been living here for over
25   two-and-a-half years. ECF No. 9-1 at 10.  Since then, petitioner has not missed any of his in-
26   person check-ins, has responded to all requests for his location through SMARTLink, and has
27   been in compliance with the conditions of his parole. Id. at 10-11; ECF No. 1 at 12.  Although
28   respondents argue that petitioner's parole automatically expired after a one-year period absent

extension, thereby authorizing them to re-detain him under the statute once his parole expired (ECF No. 12 at 2), they fail to address the fact that petitioner remained at liberty over a year-and-a-half after the initial one-year period expired. Moreover, as the court found in Omer G.G. Kaiser, "petitioner's liberty interest did not expire along with his parole." See 2025 WL 3254999, at *5.

In this case, as in Omer G.G., petitioner was released on parole pursuant to 8 U.S.C. § 1182(d)(5)(A) and received an interim notice authorizing his parole which stated: "You have been released from service custody pending a final decision in your exclusion/deportation hearing." ECF No. 1-1 at 5. The notice further explained that his parole was valid only for one year but could be extended (id. at 4), and the applicable regulations provide that if parole expires and "the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the alien be continued in custody." 8 C.F.R. § 212.5(e)(2)(i).

The court in Omer G.G. found that

> [u]nder the circumstances of this case, where immigration officials provided to petitioner a document stating that he was released "pending a final decision" in his removal proceedings, petitioner had not even had his initial hearing in those removal proceedings, and petitioner was granted a five-year work authorization permit during his year on parole status, petitioner reasonably maintained a liberty interest in his release pending a final removal decision in his immigration case. This conclusion is bolstered by the fact that the applicable regulations provide that if a non-citizen is re-detained after parole expires, they "shall again be released on parole" if their "exclusion, deportation, or removal order cannot be executed within a reasonable time . . . ." 8 C.F.R. § 212.5(e)(1), (e)(2)(i). Here, not only is there is no removal order against petitioner, but petitioner had also not even had an initial hearing in his removal proceedings when agents re-detained him.

2025 WL 3254999, at *6. The court then noted that other courts had come to the same conclusion under similar circumstances. Id., at *6 (citing Ramirez Tesara v. Wamsley, __ F. Supp. 3d __, No. 2:25-cv-1723 MJP TLF, 2025 WL 2637663 (W.D. Wash. Sept. 12, 2025); Rodriguez Cabrera v. Mattos, __ F. Supp. 3d __, No. 2:25-cv-1551 RFB EJY, 2025 WL 3072687, at *2 (D. Nev. Nov. 3, 2025); Maklad v. Murray, No. 1:25-cv-0946 JLT SAB, 2025 WL

7

2299376, at *2, 5-8 (E.D. Cal. Aug. 8, 2025)). In this case petitioner received the same notice, and it appears he also has yet to have an initial hearing, as his master hearing is currently scheduled for July 17, 2026. Moreover, while petitioner in this case does not indicate he was granted a work authorization permit, he remained at liberty for over a year-and-a-half after his initial parole expired. On these facts, the undersigned agrees with the well-reasoned decisions by the other cited courts that "petitioner's liberty interest did not expire along with his parole."

For these reasons, the undersigned finds that petitioner has established a liberty interest in his continued release. Having determined that a liberty interest exists, the court must now examine what process is due. See Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989) (the court "first asks whether there exists a liberty or property interest which has been interfered with" and then "examines whether the procedures attendant upon that deprivation were constitutionally sufficient").

To determine what process is due, the court considers three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." Rodriguez Diaz, 53 F.4th at 1206.

With respect to the first factor, petitioner has a strong private interest in remaining free from detention. As discussed above, he was paroled into the country after it was determined he was not a safety or flight risk, he has not missed any of his appointments or check-ins, and there is no indication that petitioner has not cooperated with immigration authorities during his release. Moreover, petitioner had been released in the community for over two-and-a-half years before he was re-detained during which time he met and began dating his now husband. This factor therefore weighs in petitioner's favor.

The second factor, the risk of erroneous deprivation, also weighs in petitioner's favor.

8

Considering that petitioner has been provided no process, the risk of erroneous deprivation is high, particularly in light of the fact that respondents do not argue or present any evidence that petitioner presents a danger to the community or a flight risk. See A.E. v. Andrews, No. 25-cv-0107 KES SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [a petitioner's] interest is high where [h]e has not received any bond or custody redetermination hearing[.]" (alterations in original) (citation and internal quotation marks omitted)); R.D.T.M. v. Wofford, No. 1:25-cv-01141 KES SKO, 2025 WL 2617255, at *6 (E.D. Cal. Sept 9, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." (alteration in original) (citations omitted)).

Finally, while the government has an interest in enforcing its immigration laws, "its interest in detaining petitioner without a hearing is 'low' and custody hearings in immigration court "are routine and impose a 'minimal' cost." R.T.D.M., 2025 WL 2617255, at *6 (citing Ortega, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

For these reasons, the court finds that the government's interest in detaining petitioner without a hearing is low and does not outweigh petitioner's substantial liberty interest or the high risk of erroneous deprivation of liberty. Therefore, the court finds that petitioner has established a likelihood of success on the merits of her due process claim.

### ii. Irreparable Harm

"[U]nlawful detention certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in damages." Hernandez v. Sessions, 872 F.3d 976, 999 (9th Cir. 2017). Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1979)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." Warsoldier v. Woodford, 418 F.3d 989, 1001-02 (9th Cir. 2005) (quoting 11A Wright & Miller's Federal Practice & Procedure § 2948.1 (2d ed. 2004); Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes

irreparable harm." (citation omitted)). This factor therefore weighs in petitioner's favor.

          iii.    Balance of the Equities and Public Interest

Finally, "[w]hen the government is a party, the last two factors (equities and public interest) merge." E. Bay Sanctuary Covenant v. Biden, 993 F.3d 640, 668 (9th Cir. 2021) (citing Nken v. Holder, 556 U.S. 418, 435 (2009)). As addressed above, petitioner is likely to succeed in proving that respondents have deprived him of his constitutional rights. "[The government] cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." Rodriguez v. Robbins, 715 F.3d 1127, 1145 (9th Cir. 2013); Zepeda v. U.S. Immigr. & Naturalization Serv., 753 F.2d 719, 727 (9th Cir. 1983) ("[T]he INS cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations.").

          iv.    Bond

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." However, "[d]espite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis in original) (some internal quotation marks omitted) (quoting Jorgensen v. Cassiday, 320 F.3d 909, 919 (9th Cir. 2003)). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." Jorgensen, 320 F.3d at 919 (citing Barahona-Gomez v. Reno, 167 F.3d 1228, 1237 (9th Cir. 1999)).

Petitioner argues no bond is necessary in this case (ECF No. 9-1 at 21) and respondents have not challenged his position. The court finds no security required here, as courts regularly waive security in cases such as this. See, e.g., Zakzouk v. Becerra, No. 25-cv-6254 KAW, 2025 WL 2899220, at *8 (N.D. Cal. Oct. 10, 2025) (collecting cases).

////

////

### v. Conclusion

As set forth above, petitioner has demonstrated that the Winter factors weigh in his favor. Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's motion for temporary restraining order (ECF No. 9) is GRANTED.

2. Respondents must IMMEDIATELY RELEASE petitioner Esteban Quiroga-Chaparro from custody under the same conditions of release to which he was subject prior to his October 22, 2025, detention. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

3. Within three days of the date of this order, respondents shall file a status report confirming petitioner's release.

4. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they first demonstrate by clear and convincing evidence at a bond hearing before a neutral decisionmaker that petitioner is a flight risk or danger to the community such that his physical custody is legally justified. Petitioner must be provided at least seven days' notice prior to any such pre-deprivation hearing and he shall be allowed to have his counsel present.

5. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.

6. Respondents are ORDERED TO SHOW CAUSE by no later than January 5, 2026, as to why this court should not issue a preliminary injunction on the same terms as this order. Petitioner may file a response thereto by no later than January 7, 2026. If the parties agree upon a less demanding briefing schedule, the court will consider the parties' proposal.

DATED: December 31, 2025

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

11